**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**THE JONES COMPANY**                                    **CIVIL ACTION**

**VERSUS**                                               **No. 25-1645**

**SIGNATURE FLIGHT SUPPORT, LLC, ET AL.**                **SECTION I**

<u>**ORDER AND REASONS**</u>

Before the Court is defendant, Signature Flight Support, LLC's ("Signature") motion to exclude testimony from plaintiff The Jones Company's ("TJC") expert witness, Keith M. Bransky ("Bransky").[1] TJC filed a response in opposition,[2] and Signature replied.[3] For the following reasons, Signature's motion is denied.

## I.    BACKGROUND

The Court set forth the factual background of this lawsuit in a previous order and reasons.[4] The claims in this action for negligence, gross negligence, and vicarious liability arise out of damage caused to TJC's 2024 Embraer Phenom 300E aircraft ("the aircraft").[5] On December 30, 2024, the aircraft was flown to New Orleans Lakefront Airport, where Signature was providing fixed-base operator services, including ground handling operations.[6] According to TJC, on that same day, while defendant Phillip Everett ("Everett") was towing the unpowered aircraft, the leading

---

[1] R. Doc. No. 39.

[2] R. Doc. No. 41.

[3] R. Doc. No. 45.

[4] R. Doc. No. 63.

[5] *See generally* R. Doc. No. 30.

[6] R. Doc. No. 41, at 1.

1

edge of the aircraft's left wing struck a fire hydrant, damaging the underside of the wing.[7]

With respect to the damage caused to the aircraft, TJC seeks damages for "actual, temporary, permanent, and emergency repair costs; loss of use; diminution in value; consequential damages; inconvenience; attorney's fees and costs of . . . litigation; legal interest; and any and all other damages that are shown through discovery and proven at trial."[8]

TJC retained Bransky as an aircraft appraisal expert to provide an opinion with respect to the aircraft's "pre-damage market value and post-repair diminution in value."[9] Bransky "has thirty-four years of aircraft appraisal experience," including experience "working as a licensed aircraft mechanic, professional pilot, and aircraft broker."[10] Bransky currently works full-time as an aircraft appraiser, is certified as an "Accredited Senior Appraiser with the American Society of Appraisers" ("ASA"), has authored and published articles and textbook chapters on the topic of diminution of value for damaged aircraft, and is currently authorized as a Federal Aviation Administration ("FAA") inspector.[11]

Bransky produced a fifty-three-page report (the "report"),[12] consisting of multiple parts. The report includes an introductory overview and summary, a

---

[7] *See id*. at 1–2; *see also* R. Doc. No. 39-11.
[8] R. Doc. No. 30, at ¶ 33 (capitalization modified).
[9] R. Doc. No. 41, at 2.
[10] *Id*.
[11] *Id*. at 3–4.
[12] R. Doc. No. 39-10.

discussion of the factual information that Bransky relied on, his assessment of the aircraft's relevant market, and his appraisal of the aircraft's market value and the associated diminution in value resulting from the damage.[13] The report also lists the materials that Bransky reviewed to produce his report.[14]

Signature moves to exclude Bransky as an expert witness on three grounds: (1) that Bransky is not qualified as an expert to opine on the aircraft's diminution in value, (2) that his opinions are "neither reliable nor relevant," and (3) that his "testimony will not aid the trier of fact."[15]

## II.    STANDARD OF LAW

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 588 (1993). *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

---

[13] *See generally id.*
[14] *Id.* at 9.
[15] *See* R. Doc. No. 39-1, at 7, 8, 10.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Id.*; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience).

 "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be considered in the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As a general rule, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion rather than its admissibility should be left for the jury's consideration." *Smith v. Starr Indem. & Liab. Co.*, 807 F. App'x 299, 302 (5th Cir. 2020) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 579, 596 (1993).

With respect to determining the relevance of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). When ruling on the admissibility of expert opinion evidence, "[t]he district court should, initially, approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo*, 826 F.2d at 422. An expert witness may not make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014). However, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704; *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

### III.   ANALYSIS

#### A.   Bransky is Qualified

Signature contends that Bransky is not qualified to testify as an expert in this matter because he "lacks 'specialized knowledge' of the type of aircraft at issue" and his experience is not "sufficiently related to the issues and evidence before the trier

of fact."[16] In support of its position, Signature highlights that Bransky has not "worked full time as an aircraft mechanic in any capacity" since 1980 and has not "signed off on any major repairs of any aircraft in the past five years."[17]

Signature also asserts that Bransky has "never" performed any mechanical work on an Embraer jet, never "performed in-person mechanic work on any jets," and lacks direct familiarity with fuel tank repairs.[18] Additionally, Signature argues that this matter is the "first and only time" that Bransky has appraised an Embraer aircraft.[19] It is Signature's position that Bransky "has no relevant experience with either the applicable repairs generally or as applied to the [aircraft] specifically."[20]

TJC counters that Signature ignores Bransky's "extensive aircraft maintenance background and aircraft appraisal experience,"[21] and misunderstands that Bransky is only being offered in this matter as a "valuation and appraisal expert,"[22] not as an aircraft maintenance expert.[23] TJC avers that with respect to aircraft valuation and appraisal, Bransky is "more than qualified" to offer expert testimony.[24] TJC contends that, regardless of whether he lacks recent specialized mechanical repair experience, Bransky's vast aircraft repair and appraisal work on "many different aircraft over his decades-long career," including providing expert

---

[16] R. Doc. No. 39-1, at 8 (internal citations omitted).
[17] *Id.* at 7.
[18] *See id.*
[19] *Id.*
[20] *Id.* at 8.
[21] R. Doc. No. 41, at 5.
[22] *Id.* at 8.
[23] *Id.* at 8–9.
[24] *Id.*

testimony, renders him sufficiently qualified to testify with respect to the "pre-damage market value and post-repair diminution in value of the" aircraft.[25] Moreover, TJC notes that Bransky has in fact previously appraised Embraer aircraft, including an Embraer Phenom 300 that was damaged in a towing accident.[26]

The Court finds that Bransky is suitably qualified to offer an opinion on aircraft diminution in value with respect to the aircraft due to his "extensive experience in . . . the area in which he was offered as an expert." *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 196 (5th Cir. 2018). Additionally, any concerns with respect to Bransky's lack of recent particularized experience valuing Embraer jets and aircraft mechanical repairs speak to the weight of Bransky's testimony rather than its admissibility. *See Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016); *see also Prest v. BP Expl. & Prod. Inc.*, 640 F. Supp. 3d 542, 550 (E.D. La. 2022) (Ashe, J) ("[A] lack of specialization goes to the weight, not the admissibility of the opinion."), *aff'd*, No. 22-30779, 2023 WL 6518116 (5th Cir. Oct. 5, 2023).

Bransky has more than three decades of experience in aircraft maintenance and appraisals, he has "appraised an estimated 800–1000 aircraft during that time," with an estimated 80–150 appraisals specifically addressing aircraft diminution in

---

[25] *See id.*

[26] *See id.* TJC has filed into the record Bransky's declaration and the aforementioned report. *See* R. Doc. No. 41-1.

value.[27] He also possesses numerous relevant certifications,[28] and has written extensively on aircraft appraisal—including authoring a textbook chapter published in 2020 on "Damaged Aircraft and Diminution in Value."[29] Courts have found valuation experts qualified as experts in similar circumstances. *See, e.g.*, *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, No. 10-0044, 2011 WL 890680, at *14 (E.D. La. Mar. 11, 2011) (Africk, J) ("Regarding Mr. Matherne's qualifications as a tugboat appraiser, the court can hardly ignore the fact that he has sold boats as a part of his job for years; additionally, within the last 5 years as a part of his job, he sold over 50 boats. Clearly, Mr. Matherne's valuations are admissible."); *Wachob Leasing Co., Inc. v. Gulfport Aviation Partners, LLC*, No. 16-60, 2017 WL 5240903, at *5 (S.D. Miss. Feb. 2, 2017) (finding the witness qualified as an expert on aircraft valuation because he had "over 50 years of experience in the aviation industry," "authored close to 100 reports valuing aircraft over the preceding decade," and had "performed appraisals for major lending institutions and done numerous valuations."). As such, the Court finds that Bransky is qualified to advance an expert opinion on the aircraft's pre-damage market value and post-repair diminution in value.

---

[27] *Id.* at 1.

[28] *See* R. Doc. No. 39-4 (listing degrees, certifications, and licenses: "Bachelor of Science in Aviation Management," "Associate of Applied Science in Aviation Technology," "ASA Accredited Senior Aircraft Appraiser (ASA)," "ASA Appraisal Review & Management (ARM)," "FAA Airframe & Powerplant Mechanic (A&P)," "FAA Inspection Authorization (IA)," "FAA Flight Engineer Turbojet (FEJ)"). R. Doc. No. 41-1, at 1 ("[M]y appraisals conform to the Uniform Standards of Professional Appraisal Practice ("USPAP") for development and reporting.").

[29] R. Doc. No. 39-5.

9

## B.     Bransky's Opinion is Reliable

The Court next considers whether Bransky's opinions satisfy the reliability requirements of Rule 702(b)–(d). Pursuant to *Daubert*, the Court must determine whether the expert's reasoning or methodology is grounded in sufficient facts and reliable principles, and whether those principles have been reliably applied to the facts of the case. *See Daubert*, 509 U.S. at 592-93. Signature challenges the reliability of Bransky's opinion on two grounds: his general methodology, and his consideration of information concerning the potential impact of corrosion on the aircraft's value.[30]

First, Signature argues that Bransky's opinions are unreliable because they are subjective and lack a validated methodology.[31] Specifically, Signature challenges his use of a six factor framework test for determining the aircraft's diminution in value, arguing that because it is self-created, inherently subjective, and unsupported by industry standards, it is unreliable.[32] The six factors that Signature challenges are, (1) "the type and extent of the damage;" (2) "the method, extent, and quality of the repair;" (3) "how long ago the damage occurred;" (4) "the existence of previous damage;" (5) "how the repair was recorded in the aircraft's maintenance logbooks;" and (6) "the sales market for the aircraft type that suffered the damage."[33]

As TJC correctly notes, Signature's own expert, Kenneth M. Dufour ("Dufour"), utilized a nearly identical test for assessing diminution in value.[34] Dufour refers to

---

[30] R. Doc. No. 39-1, at 8–9.
[31] *See id.*
[32] *See id.* at 9.
[33] *Id.*
[34] *See* R. Doc. No. 41-2, at 17.

the following factors as "common criteria" for a diminution of value analysis: (1) "The type and extent of the damage"; (2) "The method and quality of the repair"; (3) "How long ago the damage occurred"; (4) "The existence of previous damage"; (5) "How the repair was recorded in the aircraft's maintenance logbooks"; (6) "The sales market for the aircraft type that suffered the damage"; (7) "Cost of the Repairs and the Repairing Facility"; (8) "Modified maintenance procedures, additional/on-going (sic) inspections."[35] Dufour, like Bransky, is certified as an appraiser by the ASA,[36] which, according to Bransky, has adopted and teaches his method for aircraft appraisal and diminution in value.[37] Dufour's report states that he also helped author the ASA textbook chapter on aircraft appraisal,[38] for which Bransky wrote a section on aircraft diminution in value.[39] Signature has not challenged this representation as false.

The *Daubert* inquiry is "flexible," particularly where the expert relies on professional experience rather than strictly scientific analysis. *Kumho Tire*, 526 U.S. at 150.[40] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion." *Complete Logistical Servs., LLC v. Rulh*, 394 F. Supp. 3d 625, 637 (E.D. La. 2019) (Fallon, J) (quoting *Rosiere v.*

---

[35] *Id.*

[36] *Id.* at 2.

[37] *See* R. Doc. No. 39-5; R. Doc. No. 41-1, at 2.

[38] *See* R. Doc. No. 41-2, at 21.

[39] *See* R. Doc. No. 39-5.

[40] Signature's suggestion that the Court must apply all of the *Daubert* reliability factors for scientific methodologies, R. Doc. No. 39-1, at 2–3, is incorrect. The Fifth Circuit has held that a strict application of all of the factors "may not . . . apply even to the admissibility of pure scientific testimony." *Black v. Food Lion, Inc*, 171 F.3d 308, 311 (5th Cir. Mar. 30, 1999); *see also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 & n.3 (5th Cir. 1996).

11

*Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (Berrigan, J)).

Considering the near identical methodologies that the Signature and TJC experts advance, particularly in light of the ASA's adoption of Bransky's six factors in its published texts that both parties reference as authoritative, the Court can hardly conclude that Bransky's methodology is wholly unreliable. Perceived flaws in an expert's valuation methodology "are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *See United States v. 14.38 Acres of Land*, 80 F.3d 1074 (5th Cir. 1996).

Second, Signature's only challenge to the factual information upon which Bransky relies concerns the impact of corrosion in his diminution of value analysis.[41] Signature argues that Bransky's corrosion-related opinion, that "[c]orrosion . . . could be a real issue" at the site of the wing repair,[42] is too speculative and impermissibly based on third party information.[43] Signature does not dispute that "[c]orrosion can happen in almost any part[] of an aircraft."[44] Therefore, Signature's core complaint with Bransky's opinion is the uncertainty surrounding whether there is an increased risk of corrosion that will negatively impact a buyer's perception of the aircraft's value. However, it is not enough that Signature disagreed with Bransky's conclusions.

---

[41] R. Doc. No. 39, at 5, 9.
[42] R. Doc. No. 39-10, at 33.
[43] R. Doc. No. 39, at 5, 9.
[44] R. Doc. No. 39-11, at 84:7–11.

Whether future damage to property is certain to result is not determinative of an expert opinion's admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1078 (finding admissible, expert testimony regarding the diminution of property value due to future flood risks associated with planned levee construction). "That prospective buyers of the" aircraft "would have an increased fear" of corrosion, "thereby decreasing the market value of the" aircraft, "is a matter that the factfinder may properly consider in assessing the diminution, if any, of the" aircraft's value. *See id.*

To the extent Signature disagrees with Bransky's methodology or consideration of potential corrosion in rending his opinion, such issues go to the weight of his testimony. *See Gaffney v. State Farm Fire & Cas. Co.*, No. 06-8143, 2009 WL 3188421, at \*4 (E.D. La. July 15, 2009) (Vance, J) (quoting *14.38 Acres of Land,* 80 F.3d at 1077). Signature may attack any perceived flaws in Bransky's opinion through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted); *see also Smith*, 807 F. App'x at 302 (reasoning that generally, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion" should be left to the jury).

### C.    Bransky's Testimony is Relevant and Will Assist the Trier of Fact

Finally, the Court will address whether Bransky's testimony is relevant, whether it will assist the understanding of the trier of fact and whether it "'fits' the facts of the case." *See Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 834 (E.D. La. 2019) (Vance, J).

As a general matter, the Court agrees that Bransky's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a). One of the core issues in this dispute is the monetary value of the damage caused to the aircraft. As an expert in aircraft appraisal and diminution in value, Bransky's "testimony regarding the undamaged value of the [aircraft], how the documented damage and repairs will affect market value, and what diminution in value is reasonably attributable to the damage caused by Signature is relevant and will assist the trier of fact."[45] However, Bransky may not offer opinions on topics "for which he is not an expert or failed to conduct any expert analysis." *Rey v. LCMC Healthcare Partners, LLC*, No. 21-1188, 2025 WL 3062587, at *6 (E.D. La. Nov. 3, 2025) (Ashe, J).

Signature also asserts that Bransky's testimony is irrelevant or "its probative value is substantially outweighed by risks of prejudice, confusion of the issues, or waste of time," on two specific grounds.[46] First, Signature challenges Bransky's classification of the damage to the aircraft as "moderate" because FAA regulations only define "major" and "minor" repairs and thus his "subjective" use of "moderate" is confusing.[47] Second, Signature argues that any testimony from Bransky with respect to whether the repairs were "permanent" or "temporary" are outside his expertise and risk "confusing the trier of fact."[48]

---

[45] R. Doc. No. 41, at 13.
[46] R. Doc. No. 39, at 10 (citing Fed. R. Evid. 403).
[47] *Id.*
[48] *Id.* at 11.

14

TJC counters that Bransky's testimony describing the damage as "moderate," while not recognized by the FAA, is simply a term that Bransky used for appraisal purposes.[49] He was not using the term to describe "airworthiness" under FAA standards.[50] Similarly, TJC avers that Bransky has stated and recognized that Embraer classified the repairs as "permanent" for purposes of airworthiness. [51] TJC adds that these distinctions are easily explainable to a jury in order to avoid unnecessary confusion.[52]

First, to the extent that Signature is concerned about the semantics of particular words in a given context, they can "address the differences between" Bransky's approach, their own expert's approach, and FAA regulations "through vigorous cross-examination and the presentation of countervailing expert testimony." *Rey*, 2025 WL 3062587, at *6 (finding that a difference between an expert's assessment and the FAA's preferred approach did not bar admission). Further, both Bransky and Dufour utilize an easily comparable sliding numeric scale to classify the impact of the damage on the aircraft's value.[53] As such, there is a low, and easily remedied, risk of confusion should Bransky describe the damage as "moderate" in the context of his appraisal. Regardless, describing the damage history of an aircraft is obviously relevant for appraising its value and Bransky's testimony will "provide[] insight on a topic which the jury could not itself assess with common knowledge and

---

[49] R. Doc. No. 41, at 13–14
[50] *See id.*
[51] *See id.* at 14.
[52] *See id.*
[53] *See* R. Doc. No. 39-10, at 32; R. Doc. No. 41-2, at 18.

15

experience." *Alexander v. Intracoastal Tug & Barge Co., L.L.C.*, No. 23-2566, 2025 WL 306359, at \*6 (E.D. La. Jan. 27, 2025) (Africk, J) (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)).

Second, Bransky's report indicates that he was not offering his own opinion that the repair was permanent, rather that the repair itself would impact the value of the aircraft. His report states, "the wing skin damage requiring the installation of four permanent doublers on the lower plank inside the wing fuel tank has significant negative market perception affecting both marketability and Market Value."[54] Additionally, his deposition testimony indicates that his use of "permanent" is based on Embraer's own classification.[55] Signature has not described how this language is confusing, inaccurate, or risks misleading the factfinder. Nor do they suggest using Embraer's classification of the repair is unreliable.

It is well established that "an expert may disclose the facts underlying his opinions to the jury." *Id.* at \*7 (quoting *Barnett v. City of Laurel*, No. 2:18-cv-92, 2019 WL 5788312, at \*5 (S.D. Miss. Nov. 6, 2019). "Further, it is well-settled that experts may present their own versions of the facts underlying their opinions, subject, of course, to the jury's scrutiny. *Id.* (quoting *Pipitone*, 288 F.3d at 250).

Signature has not specifically identified in what respect it would object to the relevance of Bransky's testimony regarding the permanence of repairs—i.e., whether it takes issue with a particular use of the words "temporary" and "permanent" or with

---

[54] R. Doc. No. 39-10, at 32.
[55] R. Doc. No. 39-11, at 72:7–9.

16

respect to his analysis of the potential future need for additional repairs. This Court has already concluded that Bransky may testify to the market perception that the repaired wing is more susceptible to future damage and that his testimony must be limited to the analysis in his report.[56] Accordingly, the motion will be denied with respect to Signature's objection concerning Bransky's opinion on the permanence of the wing repairs, without prejudice to Signature's right to raise an objection to this opinion at trial if there is an insufficient foundation for the same. *See Alexander*, 2025 WL 306359, at *4.

The Court finds that Bransky's testimony is relevant and that its probative value is not substantially outweighed by the risk of unfair prejudice, confusing the issues, wasting time, or "confusing the trier of fact."[57]

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Signature's motion to exclude testimony from TJC's expert witness, Bransky, is **DENIED**.

New Orleans, Louisiana, June 15, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[56] *See* discussion *supra* pp. 13–14.
[57] *See* R. Doc. No. 39-1, at 10–11.

17